IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CR-228-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| NICHOLAS JAMES RIZZUTO, | ) | |
| | ) | |
| Defendant. | ) | |

This matter was set to come before the court for in-person arraignment October 21, 2020, before the magistrate judge, upon defendant's refusal to appear October 7, 2020, by video conference. Days before arraignment hearing, on October 19, 2020, defendant's letter motion was received wherein defendant sought appointment of new counsel. (DE 52). The matter then was calendared on this court's docket for hearing October 21, 2020, during which hearing defendant also made a motion to dismiss on speedy trial grounds. The court memorializes herein reasons for its bench orders denying appointment of new counsel, nominating his current attorney as standby counsel, and denying defendant's dismissal motion. Trial remains as earlier scheduled to commence at New Bern on January 4, 2021.

## BACKGROUND

Indictment in the instant case, filed May 13, 2020, charges defendant with five Hobbs Act Robbery offenses over a six day period in violation of 18 U.S.C. §1951, and five corresponding offenses for use and carry of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c)(1)(A)(ii). The paired offenses allegedly occurred on November 28, 2017; December 1, 2017;[1] December 1, 2017; December 2, 2017; and December 3, 2017.

---

[1] The December 1, 2017, Hobbs Act Robbery charged offense is for an "attempt[ed]" robbery, whereas the

The government's prosecution of defendant involves a complicated procedural history commencing with identical charges filed in a prior case, 5:18-CR-352-FL-1 (the "prior case"), on September 6, 2018. As pertinent here, over the course of defendant's prosecution for these offenses, trial has been continued multiple times and defendant has been represented by multiple counsel.

In the prior case, Christopher J. Locascio ("Locascio"), a veteran member of the Federal Public Defender's office, represented defendant from September 2018 to April 6, 2020. During that time, trial originally was scheduled to commence October 15, 2019. Upon defendant's motion, however, the court continued trial for the first time on September 9, 2019, resetting trial to take place to March 9, 2020.[2] Then, on February 5, 2020, upon the government's motion, on the basis of a stated "unresolvable trial witness availability issue" (DE 54 at 1), the court continued trial to July 6, 2020. Locascio moved to withdraw on April 6, 2020, by motion expressing profound difficulties representing his client culminating in a complete breakdown of the relationship, as described in part below:

> This representation has been challenging from the outset, culminating now in an irreparable breakdown of the attorney-client relationship and an irreconcilable conflict of interest. The Defendant and counsel have consistently had differing opinions about the legal strategies to be employed and the best way to defend this case. Throughout the course of this representation, defense counsel have made every possible effort to resolve the significant communication problems that have existed between Mr. Rizzuto and his defense team. . . . Mr. Rizzuto accused counsel of, among other things, not working hard enough on his case; attempting to coerce him to plead guilty; and allowing the Government time to build a case against him. Mr. Rizzuto also threatened to pursue legal action with defense counsel's professional associations if his demands, about defense strategies, were not followed.

---

remaining four Hobbs Act Robbery charged offenses are for completed robberies.

[2]  In the meantime, this matter came before the court on hearing January 21, 2020, at which the court denied defendant's motion to sever, and granted in part, denied in part, and took under advisement in part motions in limine.

2

(DE 60 at 1-2).³ The court granted the motion that same day and Kelly L. Greene ("Greene"), another veteran defense attorney, this one from the appointed rolls, entered his appearance April 8, 2020. On April 30, 2020, for reasons given, the court granted defendant's motion to dismiss the indictment in the prior case on speedy trial grounds, dismissing the indictment without prejudice. On May 1, 2020, complaint followed predating indictment here, returned May 13, 2020, on identical charges.

Greene's representation was renewed in this case, where he entered his appearance May 7, 2020. Scheduling order entered May 18, 2020, originally set the case for arraignment and trial on July 6, 2020.⁴ On June 29, 2020, at hearing on the government' motion to continue trial due to COVID-19 health risks, the court continued trial to August 10, 2020.⁵

Defendant then moved on July 24, 2020, to continue trial a second time, on the basis that his Fifth Amendment right to due process would be injured if the court proceeded to trial before the United States Court of Appeals for the Fourth Circuit decided his then-pending appeal of the terms of the court's dismissal order in the first case. The court allowed the continuance request, ordering the parties to file, within seven days of decision by the Fourth Circuit, a status report informing of suggested alternative trial dates, as appropriate.

On August 5, 2020, the Fourth Circuit granted the government's motion to dismiss the appeal and then, just six days later, on August 11, 2020, Kelly filed his motion to withdraw "based upon a disagreement between [Kelly] and Defendant concerning the strategic direction of

---

³ Co-counsel, James A. Martin, also with the Federal Public Defender, had noticed his appearance on January 17, 2020. He joined in the motion to withdraw on April 6, 2020, indicative of the dedication of additional resources by that office towards this defendant's defense.

⁴ On June 9, 2020, the court entered an order adhering to its rulings on the identical motions in the prior case. As a result, there is one pending motion in limine (DE 23) that was taken under advisement in part and remains outstanding until trial (at which point the government proposed to proffer testimony regarding defendant's drug addiction).

⁵ On July 21, 2020, the court continued trial one day later, to August 11, 2020, on its own initiative.

3

counsel's representation which has caused a breakdown in communications." (DE 44 at 1). The court promptly allowed the motion, ordered appointment of another lawyer, and extended the deadline to August 24, 2020, for the parties to file a joint notice of proposed dates for trial, reflecting the position of defendant's new attorney.

Defendant's third court-appointed attorney, another veteran defense attorney from the court's rolls, Scott L. Wilkinson ("Wilkinson"), entered an appearance for defendant on August 12, 2020. Upon joint notice of the parties, the court set arraignment for the October 2020 term of court and trial to commence January 4, 2021. At video arraignment scheduled to be held October 7, 2020, before a magistrate judge at Wilmington, where counsel for government and the defendant were present in the courtroom, defendant refused to appear by video. Ultimately the matter was scheduled to come before the undersigned October 21, 2020 at the courtroom in New Bern, where defendant was physically present.

## COURT'S DISCUSSION

Difficulties in defendant's relationships with Locascio and Green were attempted to be distinguished by defendant as different from the one of his making with his third appointed counsel, because this was the first time that defendant had expressed to the court that he wanted a new lawyer. Essentially, because Locascio and Green moved to withdraw without his permission, the court should be inclined to involve a fourth attorney now on his behalf, to take his strategic directions, rejected by Locascio, Green, and now Wilkinson. Nothing in defendant's presentation could be read to support his cause for another lawyer, except, perhaps, the fact the matter isn't scheduled to go to trial until January. That fact, however, is not controlling.

This onion has several layers to peel back before getting to the part where defendant proceeds to trial on his own here, as scheduled, with Wilkinson as his stand-by counsel. The court begins with the unquestionable, that "[i]n all criminal prosecutions, the accused shall enjoy the

4

right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). However, the Sixth Amendment's guarantee of effective assistance of counsel is not an unqualified right. United States v. Gallop, 838 F.2d 105, 107 (4th Cir. 1988). "Such right must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice." Id. at 108.

"An indigent defendant . . . can demand a different appointed lawyer only with good cause." Id. at 107. In determining whether good cause exists, the court considers (1) the timeliness of the motion; (2) the reasons why defendant wishes for new counsel; and (3) whether the purported conflict between defendant and counsel is so great that it has resulted in a total lack of communication, thereby preventing an adequate defense. United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994); Gallop, 838 F.2d at 108.

A defendant is not entitled to direct all aspects of his case. Certain decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed'" may be made by counsel without a criminal defendant's consent. Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) (quoting United States v. Teague, 953 F.2d at 1525, 1531 (11th Cir. 1992) (en banc)).

Here, defendant has not demonstrated good cause for appointment of a fourth attorney. Defendant's relationships with counsel have followed a pattern of dissatisfaction stemming from defendant's disagreements with counsel over legal strategy. Locascio noted, for example, "Defendant and counsel have consistently had differing opinions about the legal strategies to be employed and the best way to defend this case," and defendant threatened legal action "if his

5

demands[] about defense strategies[] were not followed." (DE 60 at 1-2). Kelly likewise noted "a disagreement between [Kelly] and Defendant concerning the strategic direction of counsel's representation which has caused a breakdown in communications." (DE 44 at 1). Now, defendant notes in his motion a need for new counsel because, inter alia, on the reason of "the direction of which to defend [his] case that is . . . absolute," and "mainly concerning the strategic direction of [his] case." (DE 52 at 1-2). At hearing, defendant and Wilkinson expressed defendant's differences in opinion about strategy related to speedy trial issues, with Wilkinson unwilling to attempt argument on that ground. A lawyer is required to represent a defendant in accordance with ethical obligations, skill and training in the law, and with a command of trial strategy and tactics, which representation decisions may be made without a criminal' defendant's consent. Sexton, 163 F.3d at 885. The court took it up on defendant's own initiative and readily discounted basis for any such motion.

Regurgitating his disagreement over strategy with counsel at hearing, failing in instances to demean himself appropriately, attempting at hearing to tell this court what it will do or should do, just like he repeatedly has done with the attorneys involved – those behaviors at hearing add pigment to the picture painted by the writings on the docket. And signal potential prejudice to defendant should he attempt to represent himself at trial coming.

In denying defendant's motion to appoint new counsel, the court also takes into account the statements of defendant and attorney Wilkinson at hearing. The court finds credible attorney Wilkinson's account of the conduct of counsel and defendant during their relationship, including the course of meetings between counsel and defendant. By contrast, the court finds several of defendant's reasons for seeking new counsel are not credible, such as the assertion that counsel seemingly was under the influence of alcohol, suggestion of Wilkinson's violent conduct, and his lack of communication. The court found counsel has endeavored repeatedly to communicate with

6

defendant and is willing and able to continue effective representation of defendant, particularly concerning substantive case strategies and trial representation. Wilkinson, while able to continue as counsel for defendant, spoke of the same. In this instance, conflict between defendant and counsel is not so great from counsel's perspective that it has resulted in a total lack of communication, thereby preventing an adequate defense. Counsel spoke with empathy concerning defendant's predicament, and his client's frustrations also attributable to jailhouse conditions of confinement. In a patient voice, the well-seasoned litigator indicated at hearing ready willingness to be assigned more difficult cases and the fact that he often is, by the Federal Public Defender's office, where difficulties ostensibly are attributable in some part to a client's temperament.

While timing does not in itself foreclose appointment of new counsel, undisputedly the allegations against defendant have significant age. Extended proceedings already have taken place. Trial is now set for a sixth time. Where it is unlikely that another appointed attorney will experience a different relationship with this defendant, from that experienced by the others, and defendant's repeatedly urged litigation tactics will somehow find favor with a new lawyer, subject to the same ethical constraints as the others, the court is especially mindful that defendant's right to counsel "must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice." Gallop, 838 F.2d at 108. Appointment of new counsel at this juncture would likely harm orderly progress of the case, and counteract the court's exercise of its power to control the administration of justice for this defendant and for others before the court.

In sum, where Wilkinson remained ready, able and willing to zealously defend his client, there being no basis for a fourth appointed lawyer, the court kept Wilkinson on as counsel and proceeded to arraignment. Wilkinson sought clarification of his capacity to act for this defendant, as the hearing wound down. Defendant then divested the court of belief and understanding that

7

with his eyes now open, defendant understood and agreed that he would proceed with Wilkinson as his attorney, where a fourth one would not be appointed.

Defendant emphasized that he would not work with attorney Wilkinson under any circumstance. The court expounded upon the dangers and disadvantages of self-representation. Generally, a defendant may waive his right to counsel and elect to proceed pro se if defendant's waiver is (1) clear and unequivocal; (2) knowing, intelligent and voluntary; and (3) timely. United States v. Bush, 404 F.3d 263, 271 (4th Cir. 2005). A defendant must be made aware of the dangers and disadvantages of self-representation so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 835 (1975). The Fourth Circuit requires no particular form of colloquy nor does it require a searching inquiry into defendant's waiver, but the court must in light of all the circumstances ensure that petitioner's waiver is knowing and voluntary. United States v. Ductan, 800 F.3d 642, 649 (4th Cir. 2015) (holding waiver did not occur because magistrate judge did not complete the Faretta inquiry due to defendant's frivolous responses to questions). Waiver of counsel cannot be accomplished by conduct or implication. Id. In order to determine the sufficiency of waiver of the right to counsel, the Fourth Circuit evaluates the complete profile of the defendant and the circumstances of defendant's decision as known to the trial court at the time, by examining the record as a whole. United States v. Singleton, 107 F.3d 1091, 1097 (4th Cir. 1997).

In recent cases, the Fourth Circuit closely examines the interactions between defendant and the court on the record to determine sufficiency. See, e.g., United States v. Boyle, 754 F.3d 226 (4th Cir. 2014) (holding district court did not abuse its discretion in denying defendant's motion to represent himself where there was history of mental illness); United States v. Bernard, 708 F.3d 583 (4th Cir. 2013); Bush, 404 F.3d at 263 (holding denial of defendant's motion for self-representation was warranted based on the determination that the request was manipulative).

The court found defendant capable and competent to enter into a plea, and upon his refusal so to state, entered a not guilty plea as to all charges, which he endorsed by his conduct and context. Besides discussing with him the charges and possible punishments, several times the court went back to describe substantial dangers and disadvantages of self-representation. Refusing to attest to specifics of his education, it is plain that while not educated in the law, defendant's characteristics include a developed ability to read, write, and orally express himself. Maintaining a dogged refusal despite knowledge of the problems associated with his self-representation and that the court would not appoint him a fourth lawyer, to work with Wilkinson, based on all of the foregoing, the court determined that defendant's waiver of his right to counsel was clear, unequivocal, knowing, intelligent, voluntary, and timely made, so that defendant "knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835.

Upon this determination, the court appointed attorney Wilkinson as stand-by counsel to answer defendant's procedural questions and otherwise support him, as appropriate, in the stand-by role. Defendant's request for a different attorney to act as stand-by counsel under these circumstances was little more than a back door effort to avail himself of new legal counsel. Wilkinson is best positioned to act in the capacity of stand-by counsel, with deference to determining factors.

The court is mindful that defendant must be permitted to maintain control over the case, and without defendant's consent, stand-by counsel should not be allowed to destroy the jury's perception that the defendant is representing himself. McKaskle v. Wiggins, 465 U.S. 168, 178 (1984). Toward the hearing's conclusion the court reminded defendant that his good conduct in the courtroom is not voluntary. The court will exclude a defendant from the courtroom if he becomes disruptive, and given opportunity to conform his behavior fails so to do, and in this

9

instance, the court would install Wilkinson as defendant's lawyer over his objection if circumstances at trial so warrant.

## CONCLUSION

Decisions made at hearing October 21, 2020, and the basis for them, are as set forth above. In summary of trial dates and applicable deadlines, upon not guilty plea entered at hearing, the court maintains trial as previously set to begin on January 4, 2021, with jury selection to commence at 9:30 a.m. and pretrial conference with the parties 30 minutes earlier, beginning at 9:00 a.m. As set forth in the court's August 25, 2020, scheduling order, consistent with deadlines discussed at hearing, any supplementary pretrial motions are due by December 14, 2020, with responses thereto, if any, due December 21, 2020. Any supplementary voir dire and jury instructions, and motions in limine, also are due December 21, 2020. In addition, the government is DIRECTED to file a proposed verdict form on or before December 21, 2020.

SO ORDERED, this the 26th day of October, 2020.

*[signature]*
LOUISE W. FLANAGAN
United States District Judge